```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

DENISE MARIE DIGNALL,              )
                                   )
          Plaintiff,                )
                                   )
     vs.                            )     Civil Action No. 13-1572
                                   )
CAROLYN W. COLVIN, ACTING           )
COMMISSIONER OF SOCIAL SECURITY,   )
                                   )
          Defendant.                )


### O R D E R

AND NOW, this 26th day of February, 2015, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 14) filed in the above-captioned matter on July 9, 2014,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 10) filed in the above-captioned matter on May 7, 2014,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further

evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I. **Background**

On October 13, 2009, Plaintiff Denise Marie Dignall filed a claim for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. On January 13, 2010, Plaintiff filed a claim for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. Specifically, Plaintiff claimed that she became disabled on July 31, 2009, due to seizure disorder (including syncopal episodes), migraines, posttraumatic stress disorder (PTSD), panic disorder with agoraphobia, bipolar disorder, borderline intellectual functioning, dysthymic disorder, generalized anxiety disorder and depressive disorder. (R. 15).

After being denied benefits initially on June 28, 2011, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on April 25, 2012. (R. 111-17, 118-19, 29-68). In a decision dated May 15, 2012, the ALJ denied Plaintiff's request for benefits. (R. 10-24). The Appeals Council declined to review the ALJ's decision on September 19, 2013. (R. 1-5). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d

3

110, 114 (3d Cir. 1983)).  "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion."  Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period.  See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001).  "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'"  Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity.  See 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the disability claim will be denied.  See Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

4

If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. §§ 404.1520(e), 416.920(e), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

5

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(g), 416.920(g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

## III. **The ALJ's Decision**

In the present case, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through September 30, 2013. (R. 15). Accordingly, to be eligible for Disability Insurance Benefits, Plaintiff had to establish that she was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset of disability. (R. 15). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had several severe impairments, specifically, seizure disorder (including

6

syncopal episodes), migraines, posttraumatic stress disorder (PTSD), panic disorder with agoraphobia, bipolar disorder, borderline intellectual functioning, dysthymic disorder, generalized anxiety disorder and depressive disorder. (R. 15). After addressing whether Plaintiff's impairments met or medically equaled the criteria of several listings, including Listing 12.05 specifically, the ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 16-18).

The ALJ next found that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except she can never climb a ladder, rope, or scaffold; can only occasionally balance; is limited to no exposure to unprotected heights, dangerous machinery, and like hazards; is limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks; limited to occasional and superficial interaction with co-workers and the public with no transactional interaction such as sales or negotiation; and is limited to a low stress work environment, which means no production rate pace work, but rather, goal-oriented work with only occasional and routine change in work setting. (R. 18-22). At Step Four, the ALJ found, based on this RFC, that Plaintiff had established that she is incapable of returning to her past employment, so he

7

moved on to Step Five. (R. 22). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as mail sorter, assembler, and clerical sorter. (R. 23, 63-65). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 23-24).

**IV. <u>Legal Analysis</u>**

Plaintiff argues that the ALJ erred in finding that she was not disabled because he failed to analyze her intellectual impairments properly under Listing 12.05C, 20 C.F.R. Part 404, Subpart P, Appendix 1, at Step Three of the sequential analysis. She further contends that the record establishes that her condition does, in fact, meet that listing, rendering her disabled under the Act. While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that remand is warranted in this case. Specifically, the Court finds that the ALJ failed to provide sufficient analysis regarding whether Plaintiff's impairments meet or equal the criteria of Listing 12.05C, which would render her disabled under the Act. The Court leaves for the ALJ, however, to determine — after providing a more detailed analysis of Plaintiff's alleged

8

deficits in adaptive functioning — whether Plaintiff's condition ultimately meets that listing. Accordingly, the Court finds that substantial evidence does not support the ALJ's decision, and it will remand the case for further consideration.

Listing 12.05 provides, "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The required level of severity can be met when the requirements of Listing 12.05C are satisfied, i.e., "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." In his decision, the ALJ found that Plaintiff did not meet the requirements of Listing 12.05C because, according to his analysis, she did not possess the required deficits in adaptive functioning. Specifically, the ALJ stated that, while Plaintiff's "school records show that her learning problems had an onset prior to age 22 and her lowest score on intelligence testing was a 70, the required deficit in adaptive functioning needed to meet[] listing 12.05C is not evident." (R. at 18).

Plaintiff argues in her brief that the Court need not find that she has the above-referenced "deficits in adaptive

9

functioning" in order to find that she meets the listing. This Court, however, agrees with the many courts that have found that a finding of the appropriate deficits in adaptive functioning is a requirement of 12.05C. See, e.g., Cortes v. Comm'r of Soc. Sec., 255 Fed. Appx. 646, 651 (3d Cir. 2007) (noting that under Section 12.05, the Commissioner's regulations require that a claimant prove "'subaverage general intellectual functioning with deficits in adaptive functioning' manifesting before age 22"); Gist v. Barnhart, 67 Fed. Appx. 78, 81 (3d Cir. 2003) ("As is true in regard to any 12.05 listing, before demonstrating the specific requirements of Listing 12.05C, a claimant must show proof of a 'deficit in adaptive functioning' with an initial onset prior to age 22."); Harper v. Colvin, No. 13-446, 2014 WL 1278094 at *7 (W.D. Pa. Mar. 27, 2014) (agreeing with the ALJ's interpretation of Listing 12.05C, requiring the necessary deficits in adaptive functioning, which is consistent with the Commissioner's own view and with the "view endorsed by an overwhelming majority of courts in this Circuit, including the Court of Appeals").

The law does not require, however, that one specific test be used to determine whether a claimant has the necessary "deficits in adaptive functioning" under this listing. See Harper, 2014 WL 1278094, at *7-8; Thomas v. Colvin, No. 13-267, 2014 WL 584048, at *9-10 (W.D. Pa. Feb. 14, 2014); Logan v.

Astrue, No. 07-1472, 2008 WL 4279820, at *8-10 (W.D. Pa. Sept. 16, 2008). In fact, the Social Security Administration recognizes that each of the four leading professional mental health organizations defines intellectual disability, or adaptive functioning, in a slightly different way, and allows any measurement method "'recognized and endorsed by the professional organizations.'"[1] Harper, 2014 WL 1278094, at *7 (quoting Technical Revisions to Medical Criteria for Determination of Disability, 67 Fed. Reg. 20018-01 (Apr. 24, 2002). Further, there is some disagreement as to whether the ALJ is indeed required to cite which particular test he or she

---

[1] For example, the American Psychiatric Association most recently stated that deficits in adaptive functioning "limit functioning in one or more activities of daily life, such as communication, social participation, and independent living, across multiple environments, such as home, school, work, and community." Diagnostic and Statistical Manual of Mental Disorders (DSM-V) 33 (5th ed., American Psychiatric Ass'n 2013). Further, adaptive functioning involves reasoning in three domains: "The *conceptual (academic) domain* involves competence in memory, language, reading, writing, math reasoning, acquisition of practical knowledge, problem solving, and judgment in novel situations, among others. The *social domain* involves awareness of others' thoughts, feelings, and experiences; empathy; interpersonal communication skills; friendship abilities; and social judgment, among others. The *practical domain* involves learning and self-management across life settings, including personal care, job responsibilities, money management, recreation, self-management of behavior, and school and work task organization, among others." Id. at 37. The standard for intellectual disability set forth by the American Association of Mental Retardation (now the American Association on Intellectual and Developmental Disabilities) includes "significant limitations in intellectual functioning and in adaptive behavior as expressed in conceptual (*i.e.,* receptive and expressive language, reading and writing, money concepts, and self-direction); social (*i.e.,* interpersonal, responsibility, self-esteem, gullibility, naiveté, follows rules, obeys laws, and avoids victimization); and practical adaptive skills (*i.e.,* personal activities of daily living such as eating, dressing, mobility and toileting; instrumental daily activities of daily living such as preparing meals, taking medication, using the telephone, managing money, using transportation, and doing housekeeping activities; maintaining a safe environment, and occupational skills)." Logan v. Astrue, 2008 WL 4279820, at *8 n.4 (citing Manual of Diagnosis and Professional Practice in Mental Retardation (American Ass'n on Mental Retardation, 1993)).

used in evaluating a claimant's alleged deficits in adaptive functioning. Compare id. at *8 (declining to require an ALJ to articulate one specific standard where he "sufficiently explained the benchmark he used to arrive at his conclusion"), with Shaw v. Astrue, No. 11-139J, 2012 WL 4372521, at *6 n.8 (W.D. Pa. Sept. 24, 2012) (finding that the ALJ's failure to identify and apply one of the four standards of measurement used by one of the professional organizations would require remand (citations omitted)).

Regardless of whether the ALJ was required to articulate a particular accepted standard in making his assessment, the Court finds in this case that — although the ALJ listed certain activities in which Plaintiff has engaged — he failed to sufficiently identify any standard or list of factors that he considered in determining that Plaintiff did not have "deficits in adaptive functioning" severe enough to meet Listing 12.05C. Specifically, in support of his finding, the ALJ noted that, "[t]he claimant worked as a cashier at a fast food restaurant on a part-time basis for over seven years. She testified that she was able to handle money and make change without help. She had a valid driver's license for many years until it expired in July

12

2011.  The claimant was married, had children, and lived independently for many years."[2]  (R. at 18).

The ALJ provided no further explanation with regard to his decision at this stage of the evaluation, other than stating that "[a]ll of these activities show that the claimant did not have the required deficits in adaptive functioning in order to meet listing 12.05C."  (R. at 18).  Since the ALJ did not cite any particular authority for his reliance upon the activities he mentioned, nor did he note a recognized standard or supply any list of factors to be considered in evaluating her alleged deficits in adaptive functioning,[3] his general analysis of the requirements of Listing 12.05C is insufficient to fairly ascertain whether the evidence could have shown that Plaintiff's intellectual impairments meet that listing.  Thus, because the ALJ did not fully address the requirements of Listing 12.05C, his analysis is incomplete.  While the record may ultimately provide a solid basis for finding that Plaintiff's intellectual

---

[2]  It should be noted that the ALJ only briefly touched upon the foregoing factors, and, upon consideration of Plaintiff's testimony and the other evidence of record, the Court is uncertain as to the reliability of the limited information presented in support of the ALJ's decision.  On remand, the ALJ should thoroughly consider all the evidence of record, and should more fully develop the record as necessary, in order to ensure that the severity of the factors considered in evaluating Plaintiff's intellectual deficits is sufficiently assessed in light of the requirements of Listing 12.05C.

[3]  A court "should not be required to guess what standard an ALJ has chosen to apply when conducting its substantial evidence review of the ALJ's decision."  Thomas v. Colvin, 2014 WL 584048, at *11 (citing Lansdowne v. Astrue, No. 11-487, 2012 WL 4069363, at *5 (W.D. Pa. Sept. 17, 2012); Grunden v. Astrue, No. 10-569, 2011 WL 4565502, at *5 (W.D. Pa. Sept. 29, 2011)).

13

disability does not meet the listing in question, there is enough evidence from the record to necessitate a more focused analysis as to the application of Listing 12.05C.

To the extent, though, that Plaintiff asks this Court to find, at this point, that she plainly meets Listing 12.05C, and that the ALJ's decision should be reversed and that she should be awarded benefits, the Court cannot find that substantial evidence in the record as a whole indicates that Plaintiff has met the listing, or that she is disabled and entitled to benefits. See Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984). Since the record is, at best, ambiguous as to whether Plaintiff can establish that she meets the requirements of Listing 12.05C and, in particular, whether she has the required "deficits in adaptive functioning," the Court leaves the initial analysis of this issue to the ALJ. See Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (noting that "'[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based'" (quoting SEC v. Chenery Corp., 318 U.S. 80, 87 (1943))). Indeed, the Court expresses no opinion as to whether the ALJ's ultimate determination regarding Plaintiff's impairments could be supported by the record. It is, instead,

the need for further explanation that mandates the remand on this issue.[4]

**V.     Conclusion**

In short, the record simply does not permit the Court to determine whether substantial evidence exists to support the ALJ's determination at Step Three that Plaintiff does not meet a listing, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case.  The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.


                                        s/Alan N. Bloch
                                        United States District Judge

ecf:    Counsel of record

---

[4]     Although the Court takes no position as to Plaintiff's remaining issues, the ALJ should, of course, ensure that proper weight be accorded to the opinion and medical evidence presented in the record, and he should verify that his conclusions are adequately explained, in order to eliminate the need for any future remand.